Hon. William Barry Chairman New York State Racing and Wagering Board
This is in reply to the letter of March 8, 1978, from your counsel, John Van Lindt, in which my opinion was requested as to the application of the provisions of Pari-Mutuel Revenue Law, § 63, subdivision 7 (McKinney's Unconsolidated Laws, § 8052, subd. 7). Section 63 sets forth prohibitions of interest by public officers and employees and political party officers in pari-mutuel racing activities. Subdivision 1(a) thereof states: "No public officer, public employee or party officer shall: (a) hold any license from the state racing commission, the state harness racing commission or the quarter horse racing commission * * *." Subdivision 7 of section 63 states as follows:
 "7. The provisions of paragraph (a) of subdivision one of this section shall not bar a public officer, public employee or party officer from holding any license issued by the state racing commission, the state harness racing commission or the quarter horse racing commission if he was qualified to hold such a license on or prior to April sixth, nineteen hundred fifty-four."
Mr. Van Lindt pointed out that prior to the enactment of section 63, including subdivision 1(a), by Laws of 1954, chapter 514, there was no prohibition against public officers or employees or political party officers holding racing licenses. There were, however, provisions for licensing (from 1934 to 1951 by the Jockey Club and since 1951 by The State Racing Commission) of owners, trainers, jockeys and other participants. See Murtha v. Monaghan, 1 A.D.2d 178, 187, affd. 2 N.Y.2d 819
(1957) cert. den. 355 U.S. 891 (1957); and, effective April 2, 1953, Laws of 1953, chapter 391, authorized (§ 8), the licensing, in its new section 41-a, of participants and employees at harness race meetings. He stated that the language of subdivision 7, added by Laws of 1955, chapter 815 has created certain ambiquities. At present the Racing and Wagering Board is considering four applications of individuals seeking to be licensed, respectively, as an owner, groom, trainer, and owner-trainer. All these individuals are presently employed as police officers. Only one of the applicants was over the age of 18 years prior to April 6, 1954. The request does not state whether that applicant was then employed as a police officer.
The question thus presented is whether the provisions of subdivision 7 were intended to affect or modify subdivision 1(a) in whole, in part, or not at all, as to persons presently applying for licensing by the named agencies. In the Murtha case, Judge Bastow deemed to most significant effect of subdivision 7 to have been to "lift the prohibition of paragraph (a) in its entirety as it applied to owners, drivers and other `participants'". (1 A.D.2d 186, 187.)
In this instance, we have examined the history of horse racing in this State (see, e.g., Murtha v. Monaghan, supra) as well as the memoranda submitted to the Governor at the time of the enactment of section 63, subdivision 7. From this material it becomes apparent that while the Legislature found it to be in furtherance of the public policy of the State to prohibit public officials, public employees and party officials from holding the enumerated licenses, and thus enacted section 63, subdivision 1(a), the 1955 session of the Legislature determined that there where certain individuals who were worthy and otherwise eligible in every respect to hold such licenses who had been summarily barred by the enactment of Laws of 1954, chapter 514. It was to benefit these people that Laws of 1955, chapter 815, was enacted.
Since statutes must be interpreted in the light of common sense and in a manner which avoids unreasonableness (McKinney's Statutes, § 143), I do not believe that the Legislature intended that subdivision 7 would benefit the present applicant who was older than 18 in 1954 but not the other younger present applicants. Such a construction is an absurd and inequitable construction which is also to be avoided (McKinney's Statutes, §§ 145, 147). The legislative intention probably was to facilitate the licensing of persons who had been actually employed, prior to April 6, 1954, as an owner, groom, trainer, or owner-trainer. Subdivision 7 was intended to function as a typical "grandfather's" clause, protecting those who had practiced these functions at the track, whether pursuant to invalid racing association procedures or pursuant to validly issued licenses.
Until there is clarification of the statute, either by legislative action or judicial interpretation, I must, therefore, conclude that Pari-Mutuel Revenue Law, section 63, subdivision 7, does not exempt any of the applicants referred to in the inquiry from the prohibition contained in Pari-Mutuel Revenue Law, § 63, subdivision 1(a).